U.S.A. Incorporated. Argument is not to exceed 15 minutes per side. Ms. Lord for the appellant. I'd like to reserve five minutes for rebuttal, please. Thank you. May it please the court. This case is on appeal because the trial court made two key mistakes when it dismissed appellant's lawsuit and ordered it to arbitration. The dismissal should be reversed because the trial court improperly found that the scope of an arbitration receipt drafted by a former employer covered more than what the receipt said it covered. The receipt said it covered all disputes arising out of these policies and procedures. And Mr. Kay's complaint is not one about his former employer, his former non-party employer's policies and procedures. It's about his claim that appellee fired him because of his age. Well, we've got some evidentiary problems here, don't we? The evidence you offered with your motion for reconsideration is pretty persuasive. I've just got to ask why that wasn't originally provided to the court. Absolutely. Because the issue was raised for the first time by the appellee in its reply brief. If you go through and you look at both the original motion to dismiss and our response, those two documents focus on the whole scope issue. What type of disputes did appellant and another unrelated company to appellee agree to arbitrate? That was the focus of the briefing. Then all of a sudden in the reply brief, for the very first time, we see the word judicial admission. What happened next was procedurally unfair. Judge Drain canceled oral argument and basically did not follow the general rule that an appellee raised the issue for the first time in a reply brief and that it's fundamentally unfair. This court has found that in NLRB v. International Healthcare. It is also another case, Wright v. Holbrook, Sixth Circuit, 794 F. 2nd, 1152. It is impermissible to mention an issue for the first time in a reply brief because the appellee has no opportunity to respond. Yes, we were focused on discussing the scope. You can still answer the question. The court can still make its ultimate decision on this case based solely on the scope of this arbitration agreement. We dispute that it's an agreement and we think there are some good contract reasons why it's not an agreement, but let's start for a second just with the assumption that it is an agreement. It's got some really unique and narrow language. The unique language is any and all controversies or claims arising out of or relating to these policies and procedures. Okay, so let's ask one question. What are the policies and procedures of the Phoenix Group? They're not in the record. They're not in the record. They're not in the record because when the appellee filed its motion to dismiss, that prohibited my ability to conduct any discovery. I would have been violating Federal Rule Procedure 26D1 if I had instituted any discovery, and therefore, we have no context about what these policies and procedures are. And in fact, recently, this court, two weeks ago, issued its opinion in Russell v. Citigroup, and Judge Merritt, I believe, was a panelist on that case. And Russell v. Citigroup says that you need to read the contract in context, and we have no context here. Again, even assuming that this receipt is a contract, we need to know the context. How does it relate to policies and procedures? And that begs an even more important question. How can an age discrimination claim relate to an internal policy and procedure? They're completely different. Black's Law Dictionary defines a procedure as a specific method or course of action. So an employer... Well, the real issue is they could do it if they intended to do it, but we have no evidence that they did. Isn't that it in a nutshell? Yes, you are correct. If in the policy and procedure handbook, there was a provision that said... If you bring a civil rights age discrimination case, you're going to arbitrate it, and everybody signs off on that, then you have a contract. Absolutely. And isn't that what Russell and actually Huffman both say? Yes. What's the intent of the parties? What does the contract say? Absolutely. And this court has held numerous times. When it's looked at these agreements to arbitrate, you look at the context. Morrison v. Circuit City. That was a broad agreement and referenced any legal dispute relating to their employment with Circuit City, including all state and federal claims. EEOC v. Franks Nursery talks about any claim I may wish to file against the company relative to my employment or termination, including but not limited to any claim for tort, discrimination, breach of contract, violation of public policy, or statutory claim. So we have this whole rich body of Sixth Circuit law standing in stark contrast to the alleged agreement that states any and all controversies or claims arising out of or relating to these policies or procedures. So since we don't have the policies or procedures, and it is a pretty glaring omission that the appellee did not affix them to either any of its district court filings or any of its filings to this court, because presumably if that underlying handbook was helpful to appellee, it would have introduced it. And I think that it would be appropriate for the court to take an adverse inference that by not producing this material, it will be found to show that there was no agreement to arbitrate statutory age discrimination disputes. And it is interesting. I predict that appellee will stand up and say, well, you know, this is a company that we purchased some assets from back in 2001. You know, we just can't find that old handbook. But it is interesting to note they did manage to find an old auditor's report and attach that to their documentation. And they found the original 1995 receipt. There's another huge problem with the receipt, and this goes to the public policy. And that is the severe limitations that the receipt places on the arbitrator with respect to his authority. What was the arbitrator empowered to do? Here's a hypothetical. In this old policy, there is a mandatory retirement age, and every employee shall be terminated by the time they turn age 45. The provision in the receipt states that an arbitrator may not amend, modify, or substitute for any of the provisions in these policies and procedures. So the position that that would put the arbitrator in was looking at a procedure, a policy, excuse me, and saying yes, here's policy. It says you have to leave when you're 45. I have to enforce this policy because the agreement itself says that I can't amend, modify, or substitute for any of these policies. And that's a simpler argument for you simply that there's no contract. Absolutely. Absolutely. But there's no contract for a lot of reasons, but I wanted to address the scope issue first because I am cognizant of the court's concern about the evidentiary issues. But there's no contract for many reasons. First of all, they're not between the same parties. Second of all, there was a break in employment, and the company Phoenix Group, who has the signed agreement, actually prepared a document and terminated Robert K's employment. We have other documents where the Minix company provided every couple of years a brand-new policy and procedure handbook, and those policy and procedures handbook superseded prior handbooks and prior procedures. So I think you're absolutely right that that is a strong argument, that there is certainly not a binding contract. But the funny thing is that even if Judge Drain was right and Phoenix integrated with the Minix Corporation, with Appelli, and they became one continuing operation, the practical impact of that is that the Appelli, as the surviving corporation, their policies and procedures would apply, not the old Phoenix policies and procedures. And this goes to another distinction. The Appelli admits on page one of its brief that this was an asset purchase, and there's a huge difference about what liabilities and what benefits. Your time is up, and I would like to appreciate your rebuttal time. Thank you. Good morning, Your Honors. Katherine Gardner on behalf of Defendant Appelli of the Minix Group. Do you have the Phoenix policies and procedures? I do not have it with me, Your Honor. Do you have it? Does your company have it? Does my office have it? I don't know the answer to that question, Your Honor. We're litigating about that issue, and you don't know whether you have a copy of the document? I do not, Your Honor. If I can explain, the attorney who has been handling this case up until this point, as of a few days ago, was admitted to the hospital. So I'm kind of a pinch hitter. You're in a bad position. I'm in a bad position, Your Honor. And I'm sorry about that because I have something that I want to fuss about, probably unfair to you. Okay. But I'm really concerned, Counselor, that the Minix books have not been placed in the record. What was brought below was a claim that the Phoenix receipt and contract applies, and even though it was belatedly, there's a partial explanation here, but what was put in the record afterwards, too late in a motion to reconsider, were the Minix policies and procedures books that say they supersede any prior one and, it's my understanding, don't have an arbitration clause. I will say I'm concerned because it seems to me if your client is bringing a claim that an old book applies and is holding the new book that supersedes it, I kind of think the duty of candor requires that that be provided to the court. Your point is taken, Your Honor. However, I would say that the trial court certainly had the opportunity to address that issue and found that given the agreement, which does not say, it says arising from or relating to these policies and procedures, and it says that arbitration agreement says that these policies and procedures, you know, relate to the employment relationship. But the problem is you're making that argument to the district court while you're holding in your back pocket a document that says anything prior to this in policies and procedures has been superseded. We've signed off on a new deal, and the new deal that we've signed off on doesn't have an arbitration clause in it. That's not about what the court asked for. That's about your duty of candor to provide accurate information to the court when you're making an argument based on a document that you know by your records has been superseded by something that would cause you to lose the case. Well, the arbitration agreement that was signed in 1995 was a stand-alone document, not contained in the policies and procedures. No, it referenced the fact that you would arbitrate any dispute, or I'd have to look at the exact words, arising under capital first letters, the policies and procedures. And the title of that receipt is Receipt of Policies and Procedures with a heading Policies and Procedures. So all it's giving you is the all controversies and claims arising out of or relating to these policies and procedures, capital letters, shall be resolved by arbitration. You read that correctly. If these policies and procedures go away because you have Mr. Case sign a new document that says any old policies and procedures are gone, we are governed by what I'm handing you right now, you sign it, he signs it, this is gone. Am I wrong? Explain to me why I'm wrong because it sure seems to me that it's gone. While I respectfully acknowledge your opinion and I disagree with you, I believe that employers can change policies and procedures and update them and update employees' handbooks and policies and procedures and governing rules without necessarily invalidating that stand-alone arbitration agreement. Unless the new agreement that you sign says we're superseding everything else. It's like a will. You have an old will that gives your property away, but when you put on, when you enter a new will, it says I hereby give up. Everything that was before this, it's gone. Well, that's what he signed with Minix. And again, I would respectfully disagree. I think what he signed is an agreement to arbitrate and the policies and procedures can be changed because they're different. A will is one inclusive document. And if an arbitration agreement was contained, which we know it can't be, in a handbook and you have a new handbook and new policies and procedures and we issue new ones and they say these supersede all of the new policies and procedures, I don't believe that invalidates the arbitration agreement. I believe what it does. Let's take that as a given. So now we have Minix policies and procedures and they say we don't arbitrate. Okay. Well, then I believe that that would be a question that a court or an arbitrator would have to resolve, but we don't have that question here. We don't have that question where we don't have conflicting documents which say arbitrate or don't arbitrate. We have a document that says arbitrate. We have a question as to what policies and procedures may apply and that doesn't, in my opinion, invalidate the underlying requirement to arbitrate. If you look at all of the case law coming out of this circuit, coming out of the Supreme Court, if there is a question whether or not an arbitration agreement applies, we fall in favor of arbitration. That's very well settled. How does, is it her to this? Her to this? Yes, yes. Because it effectively says it's not a contract? Her to this says that the arbitration agreement has to be a stand-alone document, that it can't be contained as a one paragraph within an employee handbook, and then you sign and accept the handbook and accept everything contained with it. This is a stand-alone document. Okay. Part of the issue that I think has to be borne in mind, which you alluded to earlier, and I'd like to address some of the comments that my colleague made, is that these issues could have been raised at the trial court level. But my colleague argued that they didn't have time, they weren't permitted. There are many things they could have done. They could have requested to file a SIR reply brief. They could have filed a motion to amend their complaint. They had evidence in their possession which said the employment relationship was altered. It wasn't presented to the trial court. The trial court ruled on what they had in front of them. What about her argument that you did not raise that issue until the reply brief? Certainly she could have filed a motion to file a SIR reply brief. The judge certainly could have requested that they brief the argument. But I think if you sit by idly, you take that at your own peril. Well, then, because you sat by idly and did not put the policies and procedures from Phoenix into the record, have you done that at your peril? I don't believe so because the trial court did not believe they were necessary for resolution of this matter. If you look at the trial court's opinion, the trial court looked at the complaint, looked at what was alleged in the complaint, looked at the facts alleged by the plaintiff, applied the proper standard. I have to accept the allegations made in the complaint as true. And the trial court said, you were employed in 1995. There's no facts saying that the employment relationship has changed. And your complaint is alleging that there are policies, practices of discriminatory behavior, and the arbitration agreement says any disputes arising out of or relating to the policies and procedures, these policies and procedures. We know that civil rights claims arise out of or related to these policies and procedures. We don't have the policies and procedures to know. And I don't see civil rights listed anywhere in here. So how do you claim that this arbitration, if it's a contract, actually covers the dispute? Because of the broad scope of the arbitration agreement, which says related to and that the policies and procedures govern the employment relationship, and those facts alleged in the complaint arise out of the employment relationship. Okay. I, quite frankly, don't have much else. I think this case has been briefed extensively. So unless you have any other questions. Okay. Thank you. I'd like to direct the court's attention to another admission that the appellees made in their initial brief to dismiss this matter. And they stated that Minix purchased Phoenix as part of an asset purchase. Under Michigan contract law, the liabilities and the contracts do not survive if there's an asset purchase. They only survive if there is a merger. So because the appellee defined the relationship as an asset purchase, and Michigan law is crystal clear on this issue, we had no reason to think that that Phoenix receipt would ever apply to Mr. K. And multiple cases under Michigan state law, Schuh v. Vokes, 203 Mishap 124, Zantel v. Whitesell, 265 Mishap 559, Howard-Johnson v. Detroit Local Joint Executive Board, that's a U.S. Supreme Court case, 417 U.S. 249, all talk about how provisions do not survive an asset purchase. There's another reason why this is not a valid agreement to arbitrate, and that is because the appellee breached it first. The alleged arbitration agreement contains a very clear provision, and counsel for appellee was crystal clear in pointing out that it's a standalone document. In this standalone document, Robert K. agreed to, presumably, arbitrate his disputes about policies and procedures with the Phoenix group in exchange for payment of one-week severance. That payment was never made. We know it's never made because, in the record, we have a different severance agreement that appellee offered to Mr. K., offering him some severance but requiring a waiver of claims in return. So the appellee can't, even if this did survive the asset purchase, the appellee can't try to enforce an agreement that it breached first. And there's just a little bit of common sense with that, too. Why in the world would Minix even think to pay severance under the Phoenix Corporation receipt? It's not the Phoenix Corporation. Of course it didn't occur to them to pay him that severance. It's not their policies. It's not their agreement. So just their own behavior in the termination of Mr. K. indicates that even the appellee did not believe that this was a binding agreement and only pulled it out after the fact to attack Mr. K.'s filing in the U.S. District Court. Your position is that fits the Russell case? Yes, yes. I think another important issue here is the impact of the shortened statute of limitations that's contained in this receipt. This court in the Boas case recently addressed this issue, and the court invalidated a six-month shortened statute of limitation under the Fair Labor Standards Act. And it's for the same reason, and because the ADEA is organized under the Fair Labor Standards Act and both statutes place severe limitations on prospective and retrospective waivers of rights, that this shortened statute of limitations, it should be found to apply affirmatively as to claims under the ADEA. The defendant relies at length in addressing this issue on a former Sixth Circuit case called Runyon v. National Cash. Now Runyon was decided in 1995, and that predated the 19, excuse me, 1985. That predates the 1990 enactment of the Older Workers Benefits Protection Act. So Runyon said, yes, employee, you can waive your ADEA claims. Then we have the Older Worker Benefits Protection Act. So Runyon, in fact, must stand for the opposite now, and the reason we know that is some key language that's contained in Runyon. Runyon says, in applying the law to the facts of this case, we are mindful that we must assume that Congress, by referring to the FLSA enforcement provisions in enacting the ADEA, was aware of the judicial interpretation of the FLSA. Thus, even if the court finds that this agreement survived the merger, even if there was not a substantial breach, we assume. Time's up. Thank you. Thank you so much. Thank you both for your arguments. Thank you. Thank you.